**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| DAVID SCHWARTZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 1:17-cv-1663 |
| v. | ) ) ) | **CLASS ACTION COMPLAINT FOR** |
| SPARTON CORPORATION, JOSEPH J. HARTNETT, ALAN L. BAZAAR, JAMES D. FAST, JOHN A. JANITZ, CHARLES R. KUMMETH, DAVID P. MOLFENTER, JAMES R. SWARTWOUT and FRANK A. WILSON, | ) ) ) ) ) ) ) | **VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff David Schwartz ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Sparton Corporation ("Sparton" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Sparton, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Sparton and Ultra Electronics Holdings plc ("Ultra Electronics").

2.       On July 7, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which each share of Sparton common stock will be exchanged for $23.50 in cash, representing approximately $235 million in the aggregate (the "Merger Consideration").

3.       On August 4, 2017, in order to convince Sparton shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.       While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy false and/or misleading.

5.       In particular, the Proxy contains materially incomplete and misleading information concerning:  (i) financial projections for the Company; and (ii) the valuation analyses performed by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James") in support of their fairness opinion.

6.       It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.       For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of (i) Rule 14a-9, and (ii) Regulation G, 17 C.F.R. § 244.100, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate

the Proposed Merger unless, and until, the material information discussed below is disclosed to Sparton shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because:  (i) the conduct at issue took place and had an effect in this District; (ii) Sparton is incorporated in this District; and (iii) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.      Plaintiff is, and at all relevant times has been, a Sparton shareholder.

12.     Defendant Sparton is incorporated in Ohio and maintains its principal executive offices at 425 North Martingale Road, Suite 1000, Schaumburg, Illinois 60173.  The Company trades on the New York Stock Exchange under the ticker symbol: ("SPA").[1]

13.     Individual Defendant Joseph J. Hartnett has served as Sparton's Interim President and Chief Executive Officer since February 2016 and a director of the Company since 2008.

14.     Individual Defendant Alan L. Bazaar has served as director of Sparton since 2016.

15.     Individual Defendant James D. Fast has served as a director of Sparton since 2001.

16.     Individual Defendant John A. Janitz has served as a director of Sparton since 2016.

17.     Individual Defendant Charles R. Kummeth has served as a director of Sparton since 2011.

18.     Individual Defendant David P. Molfenter has served as a director of Sparton since 2000.

19.     Individual Defendant James R. Swartwout has served as a director of Sparton since 2008.

20.     Individual Defendant Frank A. Wilson has served as a director of Sparton since 2015.

21.     The Individual Defendants and Sparton may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

---

[1]     http://www.reuters.com/finance/stocks/companyProfile?symbol=SPA.

4

**CLASS ACTION ALLEGATIONS**

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Sparton (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of May 5, 2017, there were approximately 9,860,635 shares of Sparton common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Sparton will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)      whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)      whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    The Merger Consideration Appears Inadequate in Light of Sparton's Recent Financial Performance and Growth Prospects**

6

24.     Sparton is a provider of design, development and manufacturing services for electromechanical devices, as well as engineered products complementary to the same electromechanical value stream.  The Company operates through two segments:  (i) Manufacturing & Design Services, and (ii) Engineered Components & Products. The Company serves the medical and biotechnology, military and aerospace, and industrial and commercial markets.

25.     On July 7, 2017, the Company announced the Proposed Merger in a press release which states, in pertinent part:

> Schaumburg, Ill. — (BUSINESS WIRE) — Jul. 7, 2017 —Sparton Corporation (NYSE: SPA) ("Sparton") announced today that it had entered into a merger agreement with Ultra Electronics Holdings plc (LSE: ULE) ("Ultra"), pursuant to which Ultra will acquire Sparton for $23.50 per share in cash.
>
> "This transaction is the result of the significant time and effort the Company has invested in its previously announced process to explore strategic alternatives, including a potential acquisition of Sparton," said Joseph J. Hartnett, Interim President & Chief Executive Officer of Sparton. "We are pleased to have successfully concluded our process with a transaction that delivers significant value to the shareholders of Sparton."

26.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.   Indeed, the Merger Consideration represents an approximate *11 percent discount* to the Company's 52-week high of $26.43 per share.  Moreover, the Company appears to be positioned for future success, as the Company has reported an increase in gross profit between five (5) and 30 percent every year since 2012.

27.     In sum, it appears that Sparton is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.   It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of

the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**II.      The Materially Incomplete and Misleading Proxy**

28.      On August 4, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.      The Proxy fails to provide material information concerning the Company's financial projections.  The Proxy provides projections for certain non-GAAP (Generally Accepted Accounting Principles) financial measures, including EBITDA, Adjusted EBITDA, Management EBITDA, Unlevered, after-tax free cash flow ("UFCF"), and Adjusted diluted earnings per share.  Proxy, 65-66.  Despite disclosing that each of the figures above are non-GAAP measures, the Proxy fails to provide the values of the line items used in their respective calculations.  *See* Proxy, 65-66 (defining the non-GAAP financial measures without providing the values of the line items disclosed).  Moreover, the Proxy fails to provide a reconciliation of the non-GAAP financial measures to their respective most directly comparable GAAP measure.

30.      First, the Proxy fails to reconcile EBITDA to its most directly comparable GAAP financial measure of net income, or provide the values of the line items used in its calculation, including:  (i) interest, (ii) taxes, (iii) depreciation and amortization.  Proxy, 65.

31.     Second, the Proxy fails to disclose the values of the line items used to calculate Adjusted EBITDA, including:  (i) non-recurring adjustments, (ii) restructuring expenses, (iii) incremental run-rate adjustments, (iv) expenses associated with being a public company, and (v) stock-based compensation expenses.  Nor does the Proxy provide a reconciliation of Adjusted EBITDA to the most directly comparable GAAP measure of net income.  Proxy, 65.

32.     Third, the Proxy fails to reconcile Management EBITDA to its most directly comparable GAAP financial measure, or provide the values of the line items used in its calculation, including:  (i) stock-based compensation expenses, (ii) incremental run-rate adjustments for MDS and ECP, and (iii) expenses associated with being a public company.  Proxy, 65.

33.     Fourth, the Proxy fails to reconcile UFCF to its most directly comparable GAAP financial measure of operating income, or provide the values of the line items used in its calculation, including:  (i) earnings, (ii) interest, (iii) taxes, (iv) depreciation and amortization, (v) capital expenditures, and (vi) investment in working capital.  Proxy, 65.

34.     Fifth, the Proxy fails to reconcile Adjusted diluted earnings per share to its most directly comparable GAAP financial measure, or provide the values of the line items used in its calculation, including:  (i) after-tax net income, (ii) forecasted, tax-effected management restructuring adjustments, (iii) one-time and non-recurring items, and (iv) stock-based compensation.  Proxy 65-66.

35.     When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

9

the most comparable financial measure or measures calculated and presented in accordance with

GAAP.  17 C.F.R. § 244.100.

36.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP

financial measures in communications with shareholders.  Former SEC Chairwoman, Mary Jo

White, recently stated that the frequent use by publicly traded companies of unique company-

specific non-GAAP financial measures (as Sparton included in the Proxy here), implicates the

centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the
> GAAP information, has become the key message to investors, crowding out and
> effectively supplanting the GAAP presentation.   Jim Schnurr, our Chief
> Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation
> Finance and I, along with other members of the staff, have spoken out frequently
> about our concerns to raise the awareness of boards, management and investors.
> And last month, the staff issued guidance addressing a number of troublesome
> practices *which can make non-GAAP disclosures misleading*: the lack of equal or
> greater prominence for GAAP measures; exclusion of normal, recurring cash
> operating expenses; individually tailored non-GAAP revenues; lack of consistency;
> cherry-picking; and the use of cash per share data.  I strongly urge companies to
> carefully consider this guidance and revisit their approach to non-GAAP
> disclosures.  I also urge again, as I did last December, that appropriate controls be
> considered and that audit committees carefully oversee their company's use of non-
> GAAP measures and disclosures.[2]

37.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can

be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3] *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]  For example, "certain adjustments may violate Rule 100(b) of Regulation G because they cause the presentation of the non-GAAP measure to be misleading.  For example, presenting a performance measure that excludes normal, recurring, cash operating expenses necessary to operate a registrant's business could be misleading."  *Id*. at Question 100.01.  Non-GAAP measures that are presented inconsistently between periods also may be misleading if the change and reason for the change is not disclosed.  *Id*. at Question 100.02.  Moreover, companies that utilize the non-GAAP measure "free cash flow" must clearly describe how this measure is calculated and provide a reconciliation.  *Id*. at Question 102.07.

38.     By causing the dissemination of the Proxy without reconciling the non-GAAP measures with their most directly comparable GAAP measures, the Defendants have violated Section 14(a) by failing to comply with Regulation G.  Moreover, the Defendants have violated Section 14(a) by failing to comply with Rule 14a-9 because the omitted information renders the projections, and accompanying footnotes, set forth on pages 65-66 of the Proxy materially false and/or misleading.  Defendants must correct, as required by the SEC, by providing a reconciliation, and consequently the values of the line items, of each non-GAAP measure to its most directly comparable GAAP measure.  If a proxy discloses projections, such projections must be complete and accurate.

---

[4] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

39.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, the Defendants acknowledge that disclosing non-GAAP financial projections may mislead shareholders.  For example, the Proxy discloses:  "The unaudited prospective financial information was not prepared with a view toward public disclosure, nor was it prepared with a view toward compliance with accounting principles generally accepted in the United States of America . . . . Company shareholders are cautioned not to place unwarranted reliance on such information[.]" Proxy, 66.  Notwithstanding this acknowledgement, the Proxy fails to provide a reconciliation of the non-GAAP measures included in the Company's financial projections, which are the financial metrics most important to the Company's shareholders.

40.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part, on the following:

- The Company board's belief that the all-cash merger consideration will allow the Company shareholders to realize in the near term a fair value, in cash, for their shares, while avoiding medium and long-term market and business risks and the risks associated with seeking to realize current expectations for the Company's future financial performance.

- The Company board's belief that the merger consideration compensates the Company shareholders not only for the value of the Company's current business and results but also for the future growth in earnings and cash flows, even assuming realization of the financial forecasts prepared by the Company management and the successful execution of the Company's growth plans.

Proxy, 60.

41.     Finally, the Proxy discloses that the Company entered into non-disclosure agreements ("NDA") with several interested parties beginning in early 2016.  Proxy, 32-35; 46-

12

47. However the Proxy fails to disclose whether the NDAs contained standstill or Don't Ask Don't Waive ("DADW") provisions.  Nor does the Proxy disclose whether said provisions remain in effect.  Because the Proxy fails to provide any information about the terms set forth in the NDAs, the Proxy is materially misleading as Sparton shareholders are unable to discern whether a superior proposal is available.

42. Standstill and DADW provisions prohibit a potential purchaser from making a superior offer after the merger agreement is signed and from asking the target company to waive the standstill provisions so potential purchaser can make a higher offer after the merger agreement is signed.  Sparton shareholders would undoubtedly find it material to know whether potential interested parties are contractually prohibited from making a superior offer to purchase the Company.

43. In sum, the Proxy violates Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and Rule 14a-9 because the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  In either scenario, the Proxy independently contravenes the rules and regulations prescribed by the Commission, and consequently, Defendants have violated Section 14(a) and Section 20(a) of the Exchange Act.

44. Absent disclosure of the foregoing material information prior to the special shareholders meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

45.      Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

46.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title."  15 U.S.C. § 78n(a)(1).

47.      Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that Proxy communications with shareholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in

order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.      SEC Regulation G has two requirements:  (1) a general disclosure requirement; and

(2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a

non-GAAP financial measure that, taken together with the information accompanying that

measure, contains an untrue statement of a material fact or *omits to state a material fact necessary*

*in order to make the presentation of the non-GAAP financial measure…not misleading.*"  17 C.F.R.

§ 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a non-

GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and

a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure

to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

49.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

50.     Defendants have issued the Proxy with the intention of soliciting shareholders support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; and (ii) the valuation analysis performed Raymond James in support of their fairness opinion.

51.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

52.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Raymond James reviewed and discussed its financial analysis with the Board, and further states that the Board considered both the financial analysis provided

15

by Raymond James as well as its fairness opinion and the assumptions made and matters considered in connection therewith.

53.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review Raymond James' analysis in connection with their receipt of the fairness opinion, question Raymond James as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

55.     Sparton is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

56.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

57.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

16

of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act)

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

59.     The Individual Defendants acted as controlling persons of Sparton within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Sparton, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Proxy filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were

thus directly involved in preparing this document.

62.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

65.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted

from the Proxy;

      C.      Directing the Defendants to account to Plaintiff and the Class for all damages

sustained as a result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses;

      E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 8, 2017

                                        **LAW OFFICES OF JOHN C.**
                                        **CAMILLUS, LLC**

                                        */s/ John C. Camillus*
                                        John C. Camillus
                                        P.O. Box 141410
                                        Columbus, OH 43214
                                        Telephone: (614) 558-7254
                                        Email: jcamillus@camilluslaw.com

                                        *Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

19